UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VAUGHAN COMPANY,

               Plaintiff,

  -v-                                            1:12-CV-1292

GLOBAL BIO-FUELS TECHNOLOGY, LLC
and RICHARD BEHNKE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

HISCOCK & BARCLAY, LLP             JOHN D. COOK, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street
Syracuse, NY 13202

BISHOP & DIEHL LTD.                   NICHOLAS S. LEE, ESQ.
Attorneys for Plaintiff
1750 East Golf Road
Suite 390
Schaumburg, IL 60173

HARRIS, BEACH PLLC                  JAMES R. MULDOON, ESQ.
Attorneys for Defendants              TED H. WILLIAMS, ESQ.
333 West Washington Street
Suite 200
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Vaughan Company ("plaintiff" or "Vaughan") brings this action against defendants Global Bio-Fuels Technology, LLC ("Global") and Richard Behnke ("Behnke") (collectively "defendants"). Plaintiff asserts a total of nine causes of action—four patent infringement claims brought pursuant to 35 U.S.C. § 271 as well as state law claims for misappropriation of trade secrets, unfair competition, tortious interference with business relationships, conversion, and breach of fiduciary duty.

Defendants have filed a motion to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2). Defendants argue that all of plaintiff's causes of action fail to state a claim upon which relief can be granted, and personal jurisdiction over Behnke is lacking. Plaintiff has responded, and defendants replied. Oral argument was heard on November 7, 2012, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

The following facts, taken from the complaint and documents attached thereto or incorporated by reference therein, are assumed true for purposes of this motion to dismiss. Vaughan, a company with its principal place of business in Washington state, designs and manufactures specialized pumps used in wastewater treatment facilities. Behnke, a Minnesota resident, began working for Vaughan in 2000.[1] Through his employment Behnke had access to a wide range of Vaughan's internal company information, including product design, manufacturing techniques, customer lists, and marketing strategies. While on

---

[1] At oral argument, defendants clarified that Behnke resided in Illinois and Minnesota while working for Vaughan.

business trips to Europe in May 2008 and February 2010, Behnke took three photographs to use in Vaughan marketing ads. A different Vaughan employee took three additional photographs for Vaughan in Italy in 2011.

In June 2010—while still employed by Vaughan—Behnke formed Global, a Minnesota company specializing in the design and manufacture of pump mixing systems similar to those of Vaughan. Behnke did not notify Vaughan about the formation of Global. Defendants have used all six of the aforementioned photographs in a marketing brochure, on Global's website, and in an August 2011 trademark application. Vaughan did not consent to the use of these photographs, which are the subject of a pending copyright application that Vaughan submitted in August 2012.

While conducting business for Vaughan, Behnke told Vaughan customers and consulting engineers that Vaughan was not properly implementing its pump systems. He also sold Global products to Vaughan customers while on business trips. Behnke resigned from Vaughan on November 10, 2011, and remains the owner and president of Global. Since his resignation, Behnke has refused to return his Vaughan laptop computer, which contains confidential company information. He has used this information to outbid Vaughan on projects in Indiana and Rensselaer County, New York. The Rensselaer project specifically requires the use of four equipment components that have been patented by Vaughan.

Defendants are currently using Vaughan contacts and internal company information to prepare bids for projects in Ohio and Cooperstown, New York. They have also been approved to submit bids for future projects in South Dakota. All of these project proposals utilize designs unique to Vaughan and system components patented by Vaughan.

**III. DISCUSSION**

Defendants assert that the complaint must be dismissed in its entirety because all of plaintiff's causes of action fail to state a claim upon which relief can be granted. Defendants also argue that personal jurisdiction over Behnke is lacking.

**A. Motion to Dismiss—Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his or her claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A district court may consider documents attached to the complaint as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). As plaintiff specifically references and quotes from the request for proposal for the Rensselaer project and defendants' bid on this project, these

documents will be considered.[2]

### B. Patent Infringement—Counts 1–4

Defendants argue that the factual allegations contained in the patent infringement causes of action do not satisfy the pleading requirements and do not adequately identify which products allegedly infringed on plaintiff's patents.

Courts are divided as to whether allegations of direct patent infringement need only mirror those contained in Form 18 of the Federal Rules of Civil Procedure[3] or the more strict pleading requirements of Iqbal. See Gradient Enters., Inc. v. Skype Techs. S.A., 848 F. Supp. 2d 404, 407 (W.D.N.Y. 2012). However, the factual allegations in Vaughan's complaint satisfy both standards. Plaintiff specifically alleges that defendants infringed on four of its patents by submitting a bid for a mixing system project in Rensselaer County in August 2012. The request for proposal required the bidder to use specific equipment and components patented by Vaughan, or its equivalent. A bid to supply a product specified in a request for proposal is an "offer to sell." FieldTurf Int'l, Inc. v. Sprinturf, Inc., 433 F.3d 1366, 1369–70 (Fed. Cir. 2006). An "offer to sell" a patented product is a ground for an infringement claim. 35 U.S.C. § 271(a).

Defendants maintain that since the request for proposal allows for equipment that is "equal" to the patented Vaughan equipment, they did not necessarily infringe on Vaughan's patents. See Request for Proposal § 1.05(A). They further point out that the pump identified

---

[2] Defendants attached these documents to their motion paperwork. See Defs.' Mem. of Law, App. A, Dkt. No. 17-2 ("Request for Proposal"); Behnke Decl., Ex. A, Dkt. No. 20-2 ("Defs.' Bid").

[3] Form 18 requires only: (1) a statement of jurisdiction; (2) an assertion that plaintiff owns the patent; (3) a statement that the defendant has infringed the patent by making, selling, and using the device embodying the patent; (4) a statement that the plaintiff has given the defendant proper notice of the infringement; and (5) a demand for an injunction and/or damages.

in their bid is a "Chop-X" pump produced by "Hayward Gordon Pumps." Defs.' Bid at 1. However, it is unclear whether this is the entire bid or if the Chop-X pump incorporates any of the components for which Vaughan holds a patent. In short, plaintiff has adequately pleaded its patent infringement claims, and it is premature to determine, as a matter of law, that defendants did not offer to sell the exact pump equipment and components that are subject to Vaughan's patents. See FieldTurf Int'l, Inc., 433 F.3d at 1370 (noting that the district court properly considered the nature of the product that was intended to be installed, not merely the language contained in the request for proposal and defendant's bid).[4]

Defendants also maintain that Vaughan failed to provide notice of the infringement as required by 35 U.S.C. § 287(a). In the complaint, however, plaintiff alleges that defendants knew of the patents before the Rensselaer bid was submitted by virtue of Behnke's employment and direct involvement in securing those very patents.[5] Moreover, the notice provision of § 287(a) serves as a limitation on damages, not as a pleading requirement. Indeed, the "[f]iling of an action for infringement shall constitute such notice." 35 U.S.C. § 287(a); see also Lee v. Accessories by Peak, 705 F. Supp. 2d 249, 255 (W.D.N.Y. 2010) (whether defendant received adequate notice pursuant to § 287(a) "is irrelevant to the court's infringement analysis" and only "pertinent to the issues of recoverability and enhancement of damages"). If discovery shows Vaughan did not properly mark its patented products or failed to provide defendants with actual notice of their infringement prior to filing this complaint,

---

[4] Importantly, the FieldTurf case—upon which plaintiff relied heavily during oral argument—was decided at the summary judgment phase, after full discovery.

[5] These allegations also sufficiently state a claim that defendants willfully infringed the patents. See In re Seagate Tech., 497 F.3d 1360, 1370–71 (Fed. Cir. 2007) ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.").

- 6 -

then any damages are limited to post-filing infringement.

Accordingly, defendants' motion to dismiss the four patent infringement claims will be denied.[6]

### C. **Misappropriation of Trade Secrets/Unfair Competition—Counts 5 and 6**

The parties rely on the same factual allegations and legal arguments for these two claims. To state a claim for misappropriation of trade secrets under New York law, Vaughan must allege that it possessed a trade secret which defendants used "in breach of an agreement, a confidential relationship, or duty, or as a result of discovery by improper means." Blank v. Pollack, 916 F. Supp. 165, 174 (N.D.N.Y. 1996) (McAvoy, C.J.) (internal quotation marks omitted). The use of misappropriated trade secrets may constitute unfair competition. See id. at 173–74.[7]

In the complaint, Vaughan specifically alleges which confidential trade secret information Behnke had access to during his employment at Vaughan. See Compl. ¶¶ 18, 21, 24. Plaintiff also alleges that Behnke remains in possession of a Vaughan laptop computer that contains confidential company information. Although Behnke did not have a formal written contract or agreement pertaining to the use of such information, plaintiff adequately alleges that his position of employment gave rise to a confidential relationship

---

[6] In their reply memorandum of law, defendants argue that the patent infringement claims involving patent numbers 5,460,482 and 5,460,483 (Counts 1 and 2) must be dismissed because these patents were set to expire on October 24, 2012—before their bid on the Rensselaer project could be accepted. This is unpersuasive because the patents were valid when the alleged "offer to sell" was made in the bid proposal in August 2012. Further, it is premature to determine when the actual sale was expected to occur, and there is nothing in defendants' bid that makes the sale contingent on the expiration of these two patents.

[7] To the extent defendants argue that the information at issue does not amount to "trade secrets," such a determination cannot be made at the motion to dismiss phase. The existence of a trade secret is usually a question of fact requiring the analysis of various factors in light of a developed record. Am. Bldg. Maint. Co. v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 308 (N.D.N.Y. 2007) (Kahn, J.).

and fiduciary duty to maintain Vaughan's confidences.  See Am. Bldg. Maint. Co., 515 F. Supp. 2d at 310 ("New York courts have found that former employees can be restricted from using their former employer's trade secrets to advance their own interests, even when they have not signed an employment agreement limiting their activities.").

Vaughan also claims that defendants used the confidential company information to solicit business from Vaughan customers in Italy in April 2011 and California in August 2011. It is further alleged that defendants used Vaughan's customer lists, business plans, financial data, proposal information, internal company memos, and pricing methods and models to bid on a project in Portland, Indiana.  Moreover, plaintiff claims that Behnke used Vaughan project proposals, pricing estimates, and marketing photographs to start Global, which competes directly with Vaughan.

Accordingly, defendants' motion to dismiss the misappropriation of trade secrets and unfair competition claims will be denied.

### D.  Tortious Interference with Business Relations—Count 7

To state a tortious interference with business relations claim under New York law, Vaughan must allege that:  (1) it had business relations with a third party; (2) defendants interfered with those business relations; (3) defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) defendants' acts injured the business relationship.  Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d. Cir. 2008).  Defendants assert that they did not interfere with any business relationships, they merely engaged in competitive bidding for public works projects.  They also argue that plaintiff has not alleged any actual harm to business relations.

In the complaint, Vaughan alleges that Behnke "told consulting engineers that Vaughan Company was doing things wrong in how it implemented its mixing systems," causing Vaughan employees "to spend a great deal of time trying to defend Vaughan Company from attacks by consulting engineers." Compl. ¶¶ 26–27. It is further alleged that Behnke solicited sales for Global from Vaughan customers while on business trips and used confidential company information to underbid Vaughan on several projects. It is reasonable to infer, for purposes of this motion to dismiss, that by soliciting to Vaughan's existing customers and criticizing its products defendants reduced Vaughan's sales and injured its existing business relationships.

These allegations sufficiently state a plausible claim. Accordingly, defendants' motion to dismiss the tortious interference with business relations claim will be denied.

### E. Conversion—Count 8

Defendants next argue that the conversion claim must be dismissed because Vaughan does not allege the conversion of any tangible property. However, plaintiff clearly alleges that Behnke failed to return a company laptop as well as tangible company records and documents. Therefore, plaintiff states a plausible conversion claim. See Am. Bldg. Maint. Co., 515 F. Supp. 2d at 314 (plaintiff adequately stated a conversion claim by alleging defendants' unauthorized removal of tangible equipment as well as contracts and customer information).

Accordingly, defendants' motion to dismiss the conversion claim will be denied.

### F. Breach of Fiduciary Duty—Count 9

Under New York law, an employee "is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times

bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (quoting W. Electric Co. v. Brenner, 360 N.E.2d 1091, 1094, 41 N.Y.2d 291, 295 (1977)). Thus, even if not bound by written covenants, employees "still have a duty of loyalty to their employer." Am. Bldg. Maint. Co., 515 F. Supp. 2d at 312.

Defendants argue that Behnke did not breach any fiduciary duty because their bid on the Rensselaer project was submitted after Behnke resigned from Vaughan. However, this ignores the allegations that Behnke criticized Vaughan's products to Vaughan customers and consulting engineers while he was employed by Vaughan. Moreover, plaintiff alleges that Behnke secretly started Global—a company competing directly with Vaughan—and solicited sales from Vaughan customers well before he resigned from the company. Therefore, plaintiff states a plausible breach of fiduciary duty claim.

Accordingly, defendants' motion to dismiss this claim will be denied.

### G. Personal Jurisdiction over Behnke

Finally, defendants argue that Behnke must be dismissed because personal jurisdiction over him is lacking.[8]

To determine whether personal jurisdiction exists over a non-domiciliary, a federal district court must apply the forum state's long-arm statute. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). If the long-arm statute permits personal jurisdiction, the court must then determine whether the exercise of such jurisdiction comports with traditional notions of due process. Id. at 164. This due process analysis incorporates

---

[8] Defendants only challenge the personal jurisdiction over Behnke, not Global.

two inquiries:  (1) whether the defendant had "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction"; and (2) whether it is reasonable to exercise jurisdiction in light of the particular circumstances of the case.  Id.  When considering the reasonableness aspect, a court may evaluate the burden on the defendants, the interests of the forum state, the plaintiff's interest in obtaining relief, interstate judicial economy, and the shared interest of "furthering fundamental substantive social policies."  Id.

New York's long-arm statute permits the exercise of personal jurisdiction over any non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  Vaughan alleges that Behnke, the sole officer and employee of Global, submitted a bid for a mixing system project in Rensselaer County, New York.  The specifics of this bid form the basis for several of plaintiff's claims, including the only federal causes of action—the four patent infringement claims.  Therefore, New York's long-arm statute provides for personal jurisdiction over Behnke.  See Chloe, 616 F.3d at 170 (noting that "section 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

Moreover, exercising personal jurisdiction over Behnke does not violate traditional standards of due process.  Behnke availed himself of the benefits and protections of New York law when he purposefully submitted a bid for the Rensselaer project on behalf of Global.  Thus, he had sufficient minimum contacts with New York to justify personal jurisdiction, even in the absence of a continuing business relationship with the state.  See id.

at 171.

Finally, the exercise of personal jurisdiction is reasonable. Although defendants may be burdened by traveling to New York for trial, any witnesses testifying about the Rensselaer project would be similarly burdened by traveling to Washington or Minnesota. New York's interest in adjudicating this matter is admittedly minimal as the patent holder, Vaughan, is a Washington company. However, protecting the integrity of the bidding process for public works projects in this state is an important interest.

Further, the interest of interstate judicial economy favors exercising jurisdiction in the Northern District of New York. Even though many of the facts alleged in the complaint occurred outside of New York, the facts related to the Rensselaer project bid arguably impact all claims except the conversion and breach of fiduciary duty causes of action. Indeed, the patent infringement claims directly relate to the Rensselaer bid, and Vaughan alleges that defendants used the misappropriated trade secrets to unfairly compete for the Rensselaer project—thereby interfering with its existing business relations.

Accordingly, defendants' motion to dismiss all claims against Behnke for lack of personal jurisdiction will be denied.

## IV. **CONCLUSION**

Vaughan has adequately alleged plausible patent infringement claims. It is premature to determine, as a matter of law, that defendants' bid proposal for the mixing system project in Rensselaer County, New York, did not infringe on plaintiff's patents. By purposefully directing Global's bid for the Rensselaer project to New York, Behnke has availed himself to the protection and benefits of the laws of this state. Thus, personal jurisdiction exists under New York's long-arm statute, and the exercise of such jurisdiction comports with traditional

notions of due process.

Further, plaintiff has alleged plausible claims for misappropriation of trade secrets, unfair competition, tortious interference with business relations, conversion, and breach of a fiduciary duty.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is DENIED; and

2. Defendants shall file their answer to the complaint on or before November 29, 2012.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 15, 2012
 Utica, New York.