UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VAUGHAN COMPANY,

                Plaintiff,

    -v-                                 1:12-CV-1292

GLOBAL BIO-FUELS TECHNOLOGY, LLC
and RICHARD BEHNKE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

HISCOCK & BARCLAY, LLP         JOHN D. COOK, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street
Syracuse, NY  13202

BISHOP & DIEHL LTD.            NICHOLAS S. LEE, ESQ.
Attorneys for Plaintiff           EDWARD L. BISHOP, ESQ.
1750 East Golf Road
Suite 390
Schaumburg, IL  60173

HARRIS BEACH PLLC            JAMES R. MULDOON, ESQ.
Attorneys for Defendants       TED H. WILLIAMS, ESQ.
333 West Washington Street
Suite 200
Syracuse, NY  13202
99 Garnsey Road               STEVEN P. NONKES, ESQ.
Pittsford, NY  14534

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On August 16, 2012, plaintiff Vaughan Company ("plaintiff" or "Vaughan") initiated this action against defendants Global Bio-Fuels Technology, LLC ("Global") and Richard Behnke (collectively "defendants"). In its complaint, plaintiff asserts nine causes of action—four patent infringement claims brought pursuant to 35 U.S.C. § 271 ("Counts 1, 2, 3, and 4") and state law claims for misappropriation of trade secrets ("Count 5"), unfair competition ("Count 6"), tortious interference with business relationships ("Count 7"), conversion ("Count 8"), and breach of fiduciary duty ("Count 9"). On October 5, 2012, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) ("Rule __"). This motion was denied in its entirety. Vaughan Co. v. Global Bio-Fuels Tech., LLC, 2012 WL 5598501 (N.D.N.Y. Nov. 15, 2012). Defendants then answered the complaint.

On December 5, 2012, Vaughan filed a separate action against these same defendants in the United States District Court for the District of Minnesota alleging copyright infringement ("the Minnesota action").

On December 18, 2012, defendants filed an amended answer in which they asserted fourteen defenses and twelve counterclaims.[1] On January 31, 2013, Vaughan filed a motion to dismiss eight of the counterclaims pursuant to Rule 12(b)(6) and to strike six of the defenses pursuant to Rule 12(f). Defendants responded in opposition and filed a cross-motion for judgment on the pleadings, pursuant to Rule 12(c), with regard to Counts 1–4 of the complaint. Vaughan replied. On March 5, 2013, Hon. Randolph F. Treece, United

---

[1] Although defendants are also counter–claimants, they will be referred to as "defendants" for the sake of clarity. Likewise, plaintiff is also a counter–defendant but will only be referred to as "plaintiff."

States Magistrate Judge, stayed all further proceedings pending the resolution of these dispositive motions.

Oral argument was heard on March 8, 2013, in Utica, New York. Decision was reserved, and the parties were directed to file briefs regarding whether this action should be transferred to the District of Minnesota to be consolidated with the Minnesota action pursuant to 28 U.S.C. § 1404(a). However, that issue is now moot as the Minnesota action has since been dismissed. Vaughn Co. v. Global Bio-Fuels Tech., LLC, No. 12-3056, 2013 WL 1900887 (D. Minn. May 7, 2013) (noting that the Minnesota action and this action arise from a common nucleus of operative fact and are thus duplicative).

On April 19, 2013, with the permission of Judge Treece, defendants moved for leave to file a second amended answer and counterclaims, and to join additional parties. This motion has been fully briefed and was considered without additional oral argument. As explained below, plaintiff's motion to dismiss the counterclaims and strike the defenses will be considered in light of the proposed second amended answer and counterclaims.

In their proposed pleading, defendants seek a declaration of unenforceability of patents ("Counterclaim 1"), a declaration of invalidity of patents ("Counterclaim 2"), and a declaration of non-infringement of patents ("Counterclaim 3"). They also assert a Walker Process antitrust claim ("Counterclaim 4"), a Handgards antitrust claim ("Counterclaim 5"), as well as claims of sham litigation ("Counterclaim 6"), defamation ("Counterclaim 7"), tortious interference with prospective business relations ("Counterclaim 8"), conspiracy to monopolize ("Counterclaim 9"), a violation of the Sherman Antitrust Act ("Counterclaim 10"), and copyright infringement ("Counterclaim 12"). Finally, they seek an equitable assignment of three copyright registrations ("Counterclaim 11").

## II. FACTUAL BACKGROUND

### A. Vaughan's Complaint

The following factual allegations, taken from plaintiff's complaint, are provided for background and will be assumed true for purposes of defendants' cross-motion for judgment on the pleadings.

Vaughan, a Washington corporation with its principal place of business in Washington state, designs and manufactures specialized pumps used in municipal wastewater treatment facilities. Behnke, a Minnesota resident, began working as a Regional Sales Manager for Vaughan in January 2000. He eventually became Vaughan's Director of Mixing Technology. These positions required him to make sales presentations regarding Vaughan's ROTAMIX® product and afforded him access to a wide range of internal corporate information, including project proposals, product designs, and customer lists. He also represented Vaughan on various business trips. During trips to Europe in 2008 and 2010 he took three photographs to use in Vaughan marketing ads. A different Vaughan employee took three additional photographs for Vaughan in Italy in 2011.

On June 14, 2010—while still employed by Vaughan—Behnke formed Global, a Minnesota company specializing in the design and manufacture of pump mixing systems similar to those of Vaughan. Behnke did not notify Vaughan about the formation of Global. He and Global have used all six of the aforementioned photographs in a marketing brochure, on Global's website, and in an August 2011 trademark application. Vaughan did not consent to the use of these photographs. In August 2012 Vaughan obtained copyright registrations for these photographs.

While conducting business for Vaughan, Behnke told Vaughan customers and

consulting engineers that the company was not properly implementing its pump systems, specifically the ROTAMIX® product. He also solicited and sold Global products to Vaughan customers. For example, in April 2011 he contacted a Vaughan representative in Italy and discussed supplying a Global mixing system for a European biogas project. Further, during an August 2011 business trip, he sold Global nozzles to the University of California, Davis, an existing Vaughan client.

Behnke resigned from Vaughan on November 10, 2011, and remains the owner and president of Global. Since his resignation, Behnke has refused to return his Vaughan laptop, which contains confidential company information. He has used this information to underbid Vaughan on mixing system projects in Portland, Indiana, in May 2012, and in Rensselaer, New York, in August 2012.[2]

The Rensselaer project requires the use of four pump system components that have been patented by Vaughan: a "backplate," a "cutter bar plate," a "cutter nut," and an "upper cutter." The backplate is covered by U.S. Patent No. 8,105,017, issued to Vaughan on January 31, 2012 ("the '017 patent"). The cutter bar plate is covered by U.S. Patent No. 5,460,483, issued to Vaughan on October 24, 1995 ("the '483 patent") and U.S. Patent No. 7,841,550, issued on November 30, 2010 ("the '550 patent"). The cutter nut is also covered by the '483 and '550 patents. The upper cutter is covered by U.S. Patent No. 5,460,482, issued to Vaughan on October 24, 1995 ("the '482 patent").

Defendants are currently using Vaughan contacts and internal information to bid on municipal pump system projects in Toledo, Ohio, and Cooperstown, New York. They have

---

[2] Plaintiff learned of defendants' bid on the Rensselaer project on August 10, 2012—only six days before it filed this action. See Compl. ¶ 40.

also been approved to submit bids for future projects in South Dakota.  All of these project proposals utilize designs unique to Vaughan's ROTAMIX® product and pump system components patented by Vaughan.

## B. Defendants' Answer and Counterclaims

In their proposed second amended answer and counterclaims, defendants allege the following additional pertinent facts, which will be assumed true for purposes of plaintiff's motion to dismiss.

In December 2000 Vaughan purchased a Hayward Gordon Chop-X pump ("the Chop-X pump"), which had been sold on the market since 1999.  Vaughan employees disassembled this pump, analyzed its design and components, and reverse engineered it. Vaughan produced a "white paper" documenting the findings regarding the Chop-X pump and distributed this document to its employees and customers.  Defendants imply that Vaughan used this information to design the components for which it eventually secured the '017 and '550 patents.  However, Vaughan and its attorneys failed to disclose the similarity of the Chop-X pump structure and operation to the PTO.  Defendants maintain that Vaughan knew Hayward Gordon owned patents for the Chop-X pump components but induced the PTO to issue the '017 and '550 patents nonetheless.  Moreover, the Chop-X pump was described in a printed publication that predates Vaughan's patent applications.

With respect to the Rensselaer project, defendants note that Global's bid included a price estimate for equipment related to a Chop-X pump.  The bid did not identify any other pump and did not include or require any specific modification to the Chop-X pump.

During the relevant time period, Vaughan employed GP Jager and Associates ("GP Jager") as a sales representative.  GP Jager is a New Jersey corporation with offices and

employees in Albany and Syracuse, New York. Randy Ott is an employee of GP Jager and a New York resident. On December 3, 2012, Ott engaged in a telephone conversation with Timothy Carpenter, a design engineer associated with a wastewater treatment project in Fulton, New York. Vaughan and Global had each submitted or were in the process of submitting a bid for this project. Ott made defamatory statements to Carpenter about Global and Behnke during the phone conversation. These statements related to the patent infringement claims in this action as well as defendants' ability to provide competent services on the Fulton project. Ott had learned of the claims included in this action from Kenneth Grauer, a Vaughan employee.

Moreover, several other employees of GP Jager and agents of Vaughan—identified as John Does Nos. 1–10 in defendants' counterclaims[3]—made defamatory statements about defendants to contractors involved in the planning of municipal projects throughout the country, including a project in Cooperstown, New York. Vaughan and Global were competing for work on the Cooperstown project.

Vaughan currently enjoys a sixty-five to seventy-five percent share of the two markets relevant to this action. Defendants identify these markets as "chopper pumps capable of pumping sludge mixtures of viscous liquids and suspended solids typically having between 1% – 6% solids by weight" ("the First Relevant Market") and "the design of mixing systems that include chopper pumps" ("the Second Relevant Market"). Proposed 2d Am. Answer & Countercls. ¶¶ 121, 129 ("Proposed Answer").

Finally, on December 5, 2012, Vaughan filed the Minnesota action alleging copyright

---

[3] Defendants report that John Doe No. 1 is a GP Jager employee and a resident of New York, while John Does Nos. 2–10 are business organizations that perform distribution, sales, and marketing functions for Vaughan.

infringement related to the six photographs described above.  Defendants claim that three of these photos belong to Behnke, who took them for his personal use and never assigned them to Vaughan.

## III.  DISCUSSION

### A.  Legal Standards

Defendants seek to amend their answer and counterclaims and join additional parties. Leave to amend a pleading should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  A motion to join parties pursuant to Rule 21 is evaluated by the same general principles as a motion to amend a pleading.  Oneida Indian Nation v. Cnty. of Oneida, 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (McCurn, S.J.).[4]  Where, as here, a party seeks to amend while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended [pleading]."  Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (internal quotation marks and alteration omitted).

Defendants do not seek to add additional counterclaims or defenses, and the parties they seek to add, GP Jager and Ott, have already been identified in the amended answer. Moreover, plaintiff has had sufficient opportunity to respond to the proposed second amended answer and counterclaims.  Plaintiff does not argue that permitting the amended pleading would cause it prejudice or conflict with any Federal Rules of Civil Procedure.  It

---

[4]  Although this is a patent case, the Second Circuit's procedural standards apply.  See Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1318 (Fed. Cir. 2009) (regional circuit law applies to procedural issues that are not specific to patent law).

instead asserts that permitting the amendments would be futile. Therefore, the merits of Vaughan's motion to dismiss will be considered in light of that proposed pleading. Indeed, if the proposed counterclaims and defenses cannot survive a motion to dismiss, then defendants' motion to amend those counterclaims and defenses will be denied as futile. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

The applicable standard for a motion to dismiss a claim pursuant to Rule 12(b)(6) also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) and a motion to strike an affirmative defense pursuant to Rule 12(f). Optigen, LLC v. Int'l Genetics, Inc., 777 F. Supp. 2d 390, 399 (N.D.N.Y. 2011) (Suddaby, J.). The same standard also guides a motion for judgment on the pleadings pursuant to Rule 12(c). King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where a party has failed to provide some basis for the allegations that support the elements of its claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the pleader's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Finally, a district court may consider documents attached to the pleading as exhibits or incorporated by reference therein.  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

### B.  Plaintiff's Motion to Dismiss Counterclaims and Strike Defenses

In their answer and counterclaims, defendants generally allege that Vaughan fraudulently induced the PTO to issue the '017 and '550 patents, which it now alleges defendants infringed through Global's bid on the Rensselaer project.  They seek a declaration that these two patents are unenforceable and invalid due to this inequitable conduct and fraud.  They also seek a declaration that their bid on the Rensselaer project did not infringe any of the four identified patents.

Defendants further allege that although Vaughan knew its patents were secured through fraud, it nevertheless pursued this "sham litigation."  They assert that Vaughan's prosecution of this action and the Minnesota action, as well as the defamatory statements its agents have uttered about defendants, have all been done in an effort to secure and maintain a monopoly on the First and Second Relevant Markets and to stifle competition from smaller companies like Global by drowning them in litigation costs.

Plaintiff seeks to dismiss Counterclaims 1, 4, 5, 6, 7, 9, 10, 11, and 12.  It also seeks to strike the following six affirmative defenses:  unenforceability of patents ("Defense 4"); patent misuse ("Defense 7"); laches ("Defense 8"); unclean hands ("Defense 9"); equitable estoppel ("Defense 10"); and prior user rights under 35 U.S.C. § 273 ("Defense 11").

### 1.  Inequitable Conduct—Counterclaim 1, Defense 4

In Counterclaim 1 and Defense 4, defendants argue that the '017 and '550 patents are unenforceable due to Vaughan's inequitable conduct during the prosecution of the

applications for these patents. Vaughan asserts that this counterclaim must be dismissed and this affirmative defense stricken because the allegations of inequitable conduct lack particularity required by Rule 9(b).

The inequitable conduct doctrine was borne out of cases involving "particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc). Over time this doctrine expanded and embraced less serious misconduct, such as "the mere nondisclosure of information to the PTO." Id. The remedy also broadened, from mere dismissal of a patent infringement claim to a declaration rendering the patent unenforceable. Id. This expansion of the doctrine prompted attorneys to assert it in the vast majority of infringement cases, "cluttering up the patent system" and creating "an absolute plague" on the courts. Id. at 1289. As a result, the standard for establishing inequitable conduct was tightened. Id. at 1290.

> To successfully invoke the doctrine of inequitable conduct,
>
> the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard does not satisfy this intent requirement. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference. In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.

Id. (internal quotation marks and citations omitted).

There are thus two separate elements, specific intent and materiality. These must be considered independently, and the intent may not be inferred from the materiality of the information. Id. "[T]he specific intent to deceive must be the single most reasonable

inference able to be drawn from the evidence." Id. (internal quotation marks omitted). Where multiple reasonable inferences may be drawn, intent cannot be found. Id. at 1290–91.

In terms of materiality, it must be shown by a preponderance of the evidence that the undisclosed information or prior art is "but-for material"—meaning the PTO would not have issued the patent had it been aware of the material. Id. at 1291. However, a patent applicant's duty to disclose material information does not extend "to prior art already considered by or known to the patent examiner." Medisim Ltd. v. BestMed LLC, 910 F. Supp. 2d 591, 611 (S.D.N.Y. 2012) (citing Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc., 326 F.3d 1226, 1235–36 (Fed. Cir. 2003)). Finally, the party alleging inequitable conduct has the burden of proof. Therasense, Inc., 649 F.3d at 1291.

Allegations invoking the inequitable conduct doctrine must be pled with particularity pursuant to Rule 9(b). Exergen Corp., 575 F.3d at 1326. To satisfy Rule 9(b), a pleading must do more than "simply aver[] the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation." Id. at 1326–27. It must instead identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1327. While the intent element of inequitable conduct may be alleged generally, the pleading must identify "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Id.

In the proposed second amended answer and counterclaims, defendants identify the Chop-X pump as prior art that was not disclosed during the prosecution of the '550 patent in April 2010. With respect to the prosecution of the '017 patent, which was issued in January

2012, they claim that Vaughan failed to disclose the Chop-X pump as well as the two Hayward Gordon patents that cover the Chop-X pump. Defendants note that during the prosecution of the '550 patent, the PTO expressly cited one of Hayward Gordon's patents as relevant prior art. Proposed Answer ¶ 167. That patent specifically invoked the other Hayward Gordon patent. Defendants contend that this establishes Vaughan's knowledge of these two patents at the time of the subsequent prosecution of the '017 patent.[5]

Defendants also allege that three Vaughan employees who were directly involved in both patent application processes—Glenn Dorsch, the inventor of the '017 and '550 patents; Dale Vaughan, President of Vaughan; and Kent Keeran, Vice President of Vaughan—knew of the prior art from the reverse engineering of the Chop-X pump in December 2000 and the subsequent white paper. They further claim that attorney Robert Deihl, the attorney of record on Vaughan's patent applications, also knew of the prior art. Defendants allege that these four individuals intentionally withheld the information from the PTO while prosecuting the patent applications between 2010 and 2012.

Although these factual allegations identify the information that specific persons failed to disclose to the PTO during the patent application processes, there is insufficient underlying factual allegations in the proposed second amended answer and counterclaims from which to reasonably infer that Vaughan's employees or its attorney acted with a specific

---

[5] However, this fact also shows that the PTO was aware of the two relevant Hayward Gordon patents during the application process for the '550 patent. Therefore, any alleged failure to disclose these two Hayward Gordon patents cannot form the basis of an inequitable conduct charge with respect to the prosecution of the '550 patent application. Medisim Ltd., 910 F. Supp. 2d at 611.

intent to deceive the PTO.[6]  There are no allegations of serious misconduct, such as perjury or the manipulation or suppression of evidence, on the part of any Vaughan employees or agents.  Instead, defendants offer only conclusory allegations that the mere nondisclosure of information to the PTO suggests such was done with specific intent to deceive.  This is not enough to establish, by clear and convincing evidence, the threshold showing of inequitable conduct or to justify the drastic remedy of a declaration of unenforceability.  See Exergen Corp., 575 F.3d at 1331 ("The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct.").

Accordingly, plaintiff's motion to dismiss Counterclaim 1 and to strike Defense 4 will be granted, and defendants' request for leave to amend same will be denied as futile.

## 2.  Antitrust Claims—Counterclaims 4, 5, and 6

In Counterclaims 4 and 5 defendants assert two antitrust claims pursuant to Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965), and Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986 (9th Cir. 1979) ("Handgards I"), respectively. Counterclaim 6, also an antitrust claim, alleges that Vaughan has brought "sham litigation." The allegations supporting these claims, and legal arguments against their dismissal, mirror those asserted in the inequitable conduct discussion above.  Again, defendants allege that the '017 and '550 were obtained through inequitable conduct and intentional fraud on the

---

[6]  As defendants cannot establish the specific intent element, it is unnecessary to determine whether the existence of the Chop-X pump and the two Hayward Gordon patents were material to the prosecution of the '017 and '550 patent applications.

PTO.  They conclude that Vaughan therefore knew its patents were invalid but nevertheless initiated this litigation in an attempt to secure and maintain a monopoly in the First and Second Relevant Markets.

A <u>Walker Process</u> claim is based on enforcement of a fraudulently procured patent, and defendants must show a specific intent to deceive the PTO.  <u>Nobelpharma AB v. Implant Innovations, Inc.</u>, 141 F.3d 1059, 1069 (Fed. Cir. 1998).  The threshold showing required under the inequitable conduct doctrine is conceptually broader and more inclusive than the fraud required to state a <u>Walker Process</u> claim.  <u>Id</u>.  A <u>Handgards</u> claim generally alleges that a plaintiff has asserted an infringement claim in bad faith, knowing the patent is invalid.  <u>Handgards, Inc. v. Ethicon, Inc.</u>, 743 F.2d 1282, 1288 (9th Cir. 1984) ("<u>Handgards II</u>") (requiring clear and convincing evidence to show baseless litigation or bad faith).  Similarly, in order to succeed on a sham litigation claim, defendants need to show that the litigation is "objectively baseless."  <u>In re DDAVP Direct Purchaser Antitrust Litig.</u>, 585 F.3d 677, 694 (2d Cir. 2009).

Defendants' <u>Walker Process</u> claim fails because, as explained above, there is insufficient underlying factual allegations from which to reasonably infer that Vaughan's employees or its attorney acted with a specific intent to deceive the PTO.  <u>See</u> <u>Dippin' Dots, Inc. v. Mosey</u>, 476 F.3d 1337, 1346 (Fed. Cir. 2007) ("To demonstrate <u>Walker Process</u> fraud, a claimant must make higher threshold showings of both materiality and intent than are required to show inequitable conduct.").  The <u>Handgards</u> and sham litigation claims fail for substantially the same reason.  Indeed, if defendants have failed to sufficiently allege that the patents were obtained through deceit or fraud, then they cannot possibly establish that

Vaughan initiated this litigation knowing that their patents were invalid.[7]

Accordingly, plaintiff's motion to dismiss Counterclaims 4, 5, and 6 will be granted, and defendants' request for leave to amend same will be denied as futile.

### 3. **Defamation—Counterclaim 7**

Vaughan argues that defendants' defamation counterclaim must be dismissed because they fail to identify the specific allegedly defamatory statements or who uttered the statements.

In order to succeed on their defamation claim under New York law,[8] defendants must show that a false statement about them was made to a third party without privilege or authorization. Diorio v. Ossining Union Free Sch. Dist., 96 A.D.3d 710, 712 (N.Y. App. Div. 2d Dep't 2012). A pleading sufficiently states a defamation claim if it adequately identifies the statement, when it was made, and to whom it was communicated. Ives v. Guilford Mills, Inc., 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (Kahn, J.). It is not necessary to plead the actual statement verbatim. Id. Instead, the "central concern" is that the allegations provide the accused with sufficient notice of the statements complained of to enable a proper defense. Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). Mere conclusory allegations that a person was disparaged by false statements are insufficient to state a defamation claim. See Reilly v. Natwest Markets Grp., Inc., 181 F.3d 253, 271 (2d Cir. 1999) (affirming dismissal of plaintiff's unsupported claim that defendant "said 'something bad'

---

[7] To the extent defendants' sham litigation claim is based on allegations that plaintiff initiated this action with knowledge that defendants' bid on the Rensselaer project could not possibly have infringed their patents, such is without merit. Indeed, plaintiff's infringement claims survived the first motion to dismiss. Vaughan Co., 2012 WL 5598501, at *2–3.

[8] The parties apparently agree that New York law governs the state claims.

about him to a client").

In their proposed counterclaims, defendants specifically allege that Randy Ott, an agent of Vaughan whom they seek to join as a counterclaim–defendant,[9] uttered defamatory statements to Timothy Carpenter during a phone conversation on December 3, 2012. These statements allegedly concerned this patent infringement action and defendants' ability to fulfill the requirements of the Fulton project. Defendants further allege that both Global and Vaughan had bid on this project and that Ott's phone call was placed in advance of a pre-bid meeting scheduled for December 4, 2012, for the purpose of interfering with Global's bid. Defendants have identified emails sent by Ott to Kenneth Grauer, a Vaughan employee. See Muldoon Decl., Ex. K, ECF No. 51-23.[10] In one email, sent before Ott's conversation with Carpenter, Ott expresses his intention to contact Carpenter to make him aware of this action. In an email sent to Grauer after the Carpenter phone call, Ott wrote "[s]poke with engineer, I told them that Global Fuels could not meet experience requirements, Vaughan and GFP Jager spent the time giving them the design, and that there were issues of patent infringement." Id.

These allegations put Vaughan on notice of the speaker, his audience, when the

---

[9] Vaughan also suggests that the defamation claim must be dismissed because Ott was not an employee of Vaughan when he uttered the alleged statement. However, a party may be held vicariously liable for defamatory statements made by its agent while acting within the scope of the agency relationship. Heredia v. United States, 887 F. Supp. 77, 81 (S.D.N.Y. 1995). Whether a proper agency relationship exists and the scope of such a relationship are issues of fact that should not be addressed at the motion to dismiss stage. Id. at 80. At this stage, defendants adequately allege that Ott—a sales representative hired by Vaughan—was acting as an agent of Vaughan when he spoke to Timothy Carpenter on December 3, 2012, about the Fulton project.

[10] Defendants initially requested to file Exhibit K under seal. However, when prompted by Judge Treece, they failed to make any showing as to why this exhibit should not be subject to the public's right of access. Instead, they argued that the motion to amend could be determined without consideration of this document. However, this document is relevant to several counterclaims. Indeed, defendants specifically and repeatedly incorporate these emails by reference in the proposed second amended answer and counterclaims and in their motion paperwork. Exhibit K has therefore been docketed and considered.

statements were uttered, and the general content of what was discussed. This is sufficient to survive the motion to dismiss. See Gen. Sec., Inc. v. APX Alarm Sec. Solutions, Inc., 647 F. Supp. 2d 207, 217–18 (N.D.N.Y. 2009) (although plaintiff did not plead the exact words, the pleading sufficiently identified the general nature of the communication and provided enough information to allow defendant to conduct a fruitful investigation and prepare a defense).

However, to the extent defendants' defamation counterclaim involves statements made by John Does Nos. 1–10, such will be dismissed. Indeed, defendants fail to identify the speakers, when the statements were made, to whom they were communicated, or the general content of the statements.

Accordingly, plaintiff's motion to dismiss Counterclaim 7 will be denied, but this counterclaim will be limited to the alleged defamatory statements uttered by Randy Ott to Timothy Carpenter during the December 3, 2012, phone conversation.

### 4. Conspiracy to Monopolize—Counterclaims 9 and 10

Defendants allege that Vaughan has conspired with GP Jager, Randy Ott, and Kenneth Grauer to secure and maintain a monopoly on the First and Second Relevant Markets. They also allege that Vaughan, GP Jager, and John Does Nos. 2-10 have entered into an anticompetitive price-fixing agreement in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. To support these counterclaims, defendants point to the allegedly defamatory statements made by Randy Ott and emails between Ott and Grauer regarding Ott's conversation with Carpenter.[11] Vaughan maintains that these counterclaims

---

[11] As further evidence of a conspiracy, defendants point to the alleged defamatory statements uttered by John Does Nos. 1–10, Vaughan's alleged fraud on the PTO in securing the patents, and Vaughan's allegedly sham patent infringement litigation. However, as explained above, defendants fail to adequately plead these allegations.

are based entirely on conclusory allegations of conspiracy and therefore must be dismissed.

In order to survive a motion to dismiss, claims of antitrust conspiracy must do more than make general allegations that are consistent with an unlawful agreement.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).  Instead, "a complaint must contain 'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made.'"  Id. (quoting Twombly, 550 U.S. at 556).

Defendants' conspiracy counterclaim does not contain enough factual matter to remotely suggest that Vaughan, GP Jager, Randy Ott, and/or Kenneth Grauer agreed to engage in anticompetitive price-fixing conduct.  As explained above, the alleged statements made by Ott to Timothy Carpenter, and the emails between Ott and Grauer, support a plausible defamation claim.  However, there is nothing in the proposed second amended answer and counterclaims from which to reasonably infer that Ott's statements were the product of a concerted agreement to interfere with any project other than the Fulton project.  Nor are they indicative of a larger conspiracy between multiple corporate entities to fix prices or monopolize the relevant markets.

Accordingly, plaintiff's motion to dismiss Counterclaims 9 and 10 will be granted, and defendants' request for leave to amend same will be denied as futile.

### 5.  Copyright Infringement—Counterclaims 11 and 12

Defendants' final two counterclaims concern the three photographs Behnke took while employed by Vaughan.  The creation and use of these photographs is also alleged in

plaintiff's complaint.[12]  The parties dispute ownership of these photographs.  Vaughan

obtained the copyright registrations to these photographs in August 2012 and argues that the

copyright infringement counterclaim—Counterclaim 12—must be dismissed because Behnke

does not own the copyright registrations.[13]  Defendants maintain that Behnke took these

pictures for his own personal use and never assigned them to Vaughan.  They claim that

Vaughan thus secured its copyright by falsely representing to the United States Copyright

Office that it owned the photographs.  Behnke seeks monetary, statutory, and enhanced

damages as well as an equitable assignment of the copyright registrations.

The Copyright Act requires that "no civil action for infringement of the copyright in any

United States work shall be instituted until preregistration or registration of the copyright

claim has been made in accordance with this title."  17 U.S.C. § 411(a).  To succeed on a

copyright infringement claim, a claimant must show:  (1) "ownership of a valid copyright"; and

(2) "unauthorized copying of the copyrighted work."  Jorgensen v. Epic/Sony Records, 351

F.3d 46, 51 (2d Cir. 2003).  Only two types of claimants can sue for infringement under the

Copyright Act—copyright owners and "persons who have been granted exclusive licenses by

owners of copyrights."  Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 32 (2d

Cir. 1982), superseded on other grounds by FED. R. CIV. P. 52(a); see also Yong Ki Hong v.

KBS Am., Inc., __ F. Supp. 2d __, 2013 WL 5366388, at *20 (E.D.N.Y. Sept. 24, 2013) ("The

---

[12]  Although Vaughan alleges that defendants have used these photographs without its consent, it
does not assert any copyright infringement claims in this action.  This is perhaps because Vaughan's
copyright application was pending when this action was initiated.  When Vaughan secured the copyright to
these photographs, it initiated the Minnesota action in which it asserted three copyright infringement claims.
However, the Minnesota action has been dismissed; it was not transferred and consolidated with this action.
Therefore, Vaughan does not have any copyright infringement claims pending in this action.

[13]  Vaughan also asserts that defendants' request for an equitable assignment of the copyright
registrations—Counterclaim 11—should be transferred to the District of Minnesota to be consolidated with the
Minnesota action.  This argument is moot in light of the dismissal of the Minnesota action.

court in <u>Eden Toys</u> expressly rejected the argument that a person other than a copyright owner or exclusive licensee may sue for copyright infringement . . . .").

As neither Behnke nor Global owns the copyright to any of the three photographs, they can not assert a copyright infringement claim. Accordingly, plaintiff's motion to dismiss Counterclaim 12 will be granted, and defendants' request for leave to amend same will be denied as futile. However, Counterclaim 11, seeking equitable assignment of the copyright registrations, remains.

### 6. <u>Patent Misuse—Defense 7</u>

The affirmative defense of patent misuse "arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." <u>C.R. Bard, Inc. v. M3 Sys., Inc.</u>, 157 F.3d 1340, 1372 (Fed. Cir. 1998). In order to prove patent misuse, the alleged infringer must show that "the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." <u>Windsurfing Int'l Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1001 (Fed. Cir. 1986) (internal quotation marks omitted). If such a showing is made, the patent is rendered unenforceable but not rendered invalid. <u>C.R. Bard, Inc.</u>, 157 F.3d at 1372.

Plaintiff is correct that, in Defense 7, defendants simply "repeat and reallege" the allegations set forth elsewhere in the proposed second amended answer and counterclaims. Proposed Answer ¶¶ 190–91. However, in the proposed amended pleading, defendants maintain that their bid on the Rensselaer project referenced a pump and components that could not possibly infringe Vaughan's patents, several of which were set to expire before the implementation of the project. Indeed, this appears to be their primary defense to the merits of the patent infringement claims. Defendants have thus adequately alleged that Vaughan

has sought to impermissibly broaden the physical and temporal scope of its patents in an effort to stifle its competition by asserting the patent infringement claims in this action.[14]

Accordingly, plaintiff's motion to strike Defense 7 will be denied.

### 7.  Laches, Equitable Estoppel, and Prior Rights—Defenses 8, 10, and 11

Defendants imply that since their bid on the Rensselaer project contemplated a Chop-X pump, Vaughan's patent infringement claims essentially allege that the Chop-X pump infringes its patents.  Based on this assumption, they conclude that the patent infringement claims are barred by the doctrine of laches because Vaughan was keenly aware of the design and structure of the Chop-X pump since 2001, as evidenced by the white paper, but failed to bring infringement claims related to this type of pump before August 2012 (Defense 8).  They also claim that they relied on the fact that Vaughan did not assert any infringement claims related to the Chop-X pump, and conclude that Vaughan should be barred from now bringing such claims under the doctrine of equitable estoppel (Defense 10).  Finally, they assert that Vaughan's infringement claim related to the '017 patent is barred by prior user rights under 35 U.S.C. § 273 because the Chop-X pump had been in use and on the market since 1999 (Defense 11).

These arguments are without merit.  As Vaughan specifically explains, it "is not asserting that the Chop-X pump, by itself, infringes Vaughan's patents.  Rather, Vaughan contends that [Global]'s bid in response to the bid specifications for the Rensselaer project is an infringing offer for sale."  Pl.'s Opp'n Mem. 5, ECF No. 55.  Indeed, if discovery reveals

---

[14]  This defense speaks to the merits of Vaughan's patent infringement claims and alleges that Vaughan seeks to broaden their valid patents to anticompetitive effect.  This defense does not relate to defendants' inequitable conduct and antitrust counterclaims, which will be dismissed.

that defendants only offered to sell pump components that are not covered by any of Vaughan's patents, then the infringement claims will be without merit.

This action was filed only six days after Vaughan learned of Global's bid. The defense of laches is therefore inapplicable. Further, any alleged representation made by Vaughan regarding whether the Chop-X pump infringes its patents does not constitute a promise not to bring infringement claims related to different pumps or components. Similarly, the prior use of the Chop-X pump does not bar the current infringement claims, which plaintiff maintains do not simply relate to that pump itself.

Accordingly, plaintiff's motion to strike Defenses 8, 10, and 11 will be granted, and defendants' request for leave to amend same will be denied as futile.

### 8. <u>Unclean Hands—Defense 9</u>

Finally, defendants assert the defense of unclean hands. This defense is limited to equitable relief, and cannot be asserted against claims for money damages. <u>Aetna Cas. & Sur. Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 607 (2d Cir. 2005) (per curiam). Also, "misconduct unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." <u>Dunlop–McCullen v. Local 1-S</u>, 149 F.3d 85, 90 (2d Cir. 1998) (internal quotation marks and alterations omitted).

It is unclear to which claims for equitable relief defendants intend to apply this defense. To the extent they attempt to argue that their alleged patent infringement is justified or excused by Vaughan's alleged fraud on the PTO, such will be stricken for the same reasons their counterclaims and defenses asserting inequitable conduct will be dismissed and stricken. However, it is premature to completely strike this defense. This issue may be revisited after discovery has been completed to determine what, if any, actions by Vaughan

may justify this defense.

### C. **Defendants' Cross-Motion for Judgment on the Pleadings**

Defendants argue that they are entitled to judgment on the pleadings with regard to Counts 1–4, which allege infringement of the four patents.[15]  This motion is premature because Vaughan has not yet answered the counterclaims.  See FED. R. CIV. P. 12(c) (a party may seek judgment on the pleadings "[a]fter the pleadings are closed (emphasis added)).

Even if the cross-motion was properly made, however, it would be denied. Defendants argue that Vaughan has conceded that the Chop-X pump does not infringe its patents.  They conclude that since they merely offered to sell the Chop-X pump in their bid for the Rensselaer project, such could not have possibly infringed Vaughan's patents, and they are entitled to judgment accordingly.  However, as noted previously, Vaughan is not alleging that the offer to sell the Chop-X pump itself infringes their patents.  They instead claim that the components and equipment contemplated in defendants' bid infringes their patents.

At this early stage of the litigation, plaintiff is entitled to discovery to determine if defendants' bid did, in fact, infringe.  Indeed, the terms of the bid indicate that the Chop-X pump is only "part of this project."  Am. Answer, Ex. A, ECF No. 25-1.  It is unclear whether this bid contemplated any alterations to the Chop-X pump or otherwise included components for which Vaughan holds patents.  See FieldTurf Int'l, Inc. v. Sprinturf, Inc., 433 F.3d 1366, 1370 (Fed. Cir. 2006) (noting that the district court properly considered the nature of the

---

[15]  Defendants' motion to dismiss these same claims pursuant to Rule 12(b)(6) was denied.  Vaughan Co., 2012 WL 5598501, at *2–3.

- 24 -

product that was intended to be installed, not merely the language contained in the request for proposal and defendant's bid).  As explained in the MDO denying their motion to dismiss, Counts 1–4 are adequately pled.  See Vaughan Co., 2012 WL 5598501, at *3.

Accordingly, defendants' cross-motion for judgment on the pleadings will be denied.

## IV.  CONCLUSION

Defendants fail to sufficiently allege that Vaughan engaged in inequitable conduct when prosecuting its patent applications or intended to deceive the PTO.  They therefore cannot establish that Vaughan initiated this action knowing their patents were invalid or unenforceable.  They have also failed to adequately plead any antitrust violations by Vaughan.  Moreover, they cannot assert copyright infringement claims as they are not the holders of the copyrights at issue.  Conversely, defendants have alleged a plausible defamation claim related to Randy Ott's phone conversation with Timothy Carpenter.

Therefore, in light of the above, it is

ORDERED that

1.  Plaintiff Vaughan Company's motion to dismiss certain counterclaims and to strike certain defenses (ECF No. 34) is GRANTED in part and DENIED in part;

2.  Defendants Global Bio-Fuels Technology, LLC and Richard Behnke's cross-motion for judgment on the pleadings (ECF No. 39) is DENIED in its entirety;

3.  Defendants' motion for leave to file a second amended answer and counterclaims (ECF No. 51) is GRANTED in part and DENIED in part;

4.  Counterclaims 1, 4, 5, 6, 9, 10, and 12 are DISMISSED;

5.  Defenses 4, 8, 10, and 11 are STRICKEN;

6.  On or before October 30, 2013, defendants shall file the second amended answer

and counterclaims, including only Defenses 1, 2, 3, 5, 6, 7, 9, 12, 13, and 14; Counterclaims 2, 3, 7, 8, and 11; and counter–defendants Vaughan Company, G.P. Jager and Associates, Inc., and Randy Ott; and

    7.  Upon filing of the second amended answer and counterclaims, the Clerk of the Court is directed to amend the caption accordingly and issue a summons for service upon the additional counterclaim–defendants.

    IT IS SO ORDERED.

United States District Judge

Dated:  October 23, 2013
        Utica, New York.