**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────
VAUGHAN COMPANY,

                Plaintiff,

      - v -                                Civ. No. 1:12-CV-1292
                                                     (DNH/RFT)

GLOBAL BIO-FUELS TECHNOLOGY, LLC
and RICHARD BEHNKE,
                Defendants.
────────────────────────────────────────

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Presently before this Court is Defendants'[1] Letter-Motion asking this Court to address Vaughan Company's (hereinafter "Vaughan") purportedly insufficient patent infringement contentions under this District's Local Patent Rules. Dkt. No. 80, Defs.' Lt.-Br., dated May 30, 2014. Vaughan vigorously disputes that its infringement contentions are insufficient. Dkt. No. 81, Pl.'s Lt.-Br., dated May 30, 2014. Both parties allude to the Memorandum-Decision and Order, dated October 23, 2013, issued by the Honorable David N. Hurd, United State District Judge, presaging what may constitute an accused instrumentality in this case and, consequently, having a significant bearing on the nature and extent of the infringement contentions. Dkt. No. 62.

───────────────────

[1] Hereinafter, Defendants Global Bio-Fuels Technology, LLC and Richard Behnke shall be referred to as "GBFT."

# I. CASE HISTORY

To appreciate this discovery issue, a case history is necessary.

## A. Complaint

On August 16, 2012, Vaughan filed a Complaint against GBFT alleging nine causes of action. Dkt. No. 1, Compl. For our purposes, the Court refers to only the patent infringement causes of action and to the Rensselaer Project event. *Id.* at Counts I-IV. The parties are competitors in the design and manufacture of pump mixing systems, products, and services. *Id.* at ¶ 9. Vaughan is a nationally-recognized designer and manufacturer of chopper pumps used in the fields of commercial and municipal wastewater treatment, and one of its better known systems is the ROTAMIX® product. *Id.* at ¶¶ 18 & 21.

On August 20, 2012 – six days prior to the filing of this Complaint -- Vaughan became aware of GBFT's bid to design a digester mixing system project for Rensselaer County, New York (hereinafter the "Rensselaer Project"). It is alleged that the Rensselaer Project, under section 2.03 of the bid specification,[2] calls for a

---

[2] The Rensselaer Project bid specification, under the quality assurance section, states, [a]ll equipment shall be of the highest quality throughout, designed for a long life of trouble free operation. All of the mixing equipment shall be furnished by a single manufacturer and guaranteed for process and mechanical performance by the original equipment manufacturer. All equipment shall be Rotamix by Vaughan Company Inc. of Washington State (basis of design), Liquid Dynamics Corp. or equal. Chopper pumps shall be Vaughan model PE6W8CS-118 or equal.
Dkt. No. 80-2, Defs.' Ex. B, at ¶ 1.03(A).

(continued...)

backplate, a cutter bar plate, a cutter nut, and an upper cutter, which would encompasses Vaughan's 017, 482, 483, and 550 United States Patents. *Id.* at ¶¶ 41-53. Based upon the bid process, it is alleged that GBFT infringed these patents by "offering for sale" Vaughan's product and services.[3] *Id.* at ¶¶ 78-93; *see also* Dkt. No. 62 at p. 5.

Contrariwise, GBFT contends that during July 2012, it submitted a price estimate for portions of a bio-fuels mixing system for the Rensselaer Project. That price estimate included an estimate for equipment that would work with a Hayward Gordon "Chop-X" pump, but does not imply that it was offering for sale any other type of chopper pump nor mentions any modification to the Chop-X pump.[4] Further, GBFT argues that neither the price estimate for the Rensselaer Project nor the Chop-X pump infringe Vaughan's patents. Dkt. No. 63, Second Am. Answer, dated Oct. 29, 2013, at Fourth Defense, ¶¶ 133-142, & Third Counterclaim, ¶¶ 81, 85-90. Recognizing, however, that Vaughan is asserting that its price estimate for the Rensselaer Project "literally" infringes Vaughan's patents, Dkt. No. 63, Second Am.

---

[2](...continued)

[3] 35 U.S.C. § 271(a) states, in part, that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent.

[4] GBFT's price estimate identifies the proposed system pumps as "one (1) Chop-X pump as produced by Hayward Gordon Pumps . . . to be included as a part of this project." Dkt. No. 80-3, Defs.' Ex. C.

Answer, (First Counterclaims), at ¶¶ 44-49, 57-59, GBFT contends that even though Vaughan has not brought a patent infringement action directly against the Chop-X pump, Vaughan, by virtue of this lawsuit, is indeed alleging that the Chop-X pump literally infringes its patents. *Id.* at Second Counterclaim, ¶¶ 76.

## B. Previous Dispositive Motions

Judge Hurd addressed two Motions to Dismiss. Initially, GBFT moved to dismiss Vaughan's Complaint. Dkt. No. 17, Defs.' Mot. to Dismiss, dated Oct. 5, 2012. Speaking directly to Vaughan's four patent infringement causes of action, Judge Hurd found that the factual allegations within the Complaint complied with the requisite pleading standards and accordingly denied GBFT's Motion. Dkt. No. 22, Mem.-Dec. & Order, dated Nov. 15, 2012, at pp. 5-7. Judge Hurd noted that

> Plaintiff specifically alleges that defendants infringed on four of its patents by submitting a bid for a mixing system project in Rensselaer County in August 2012. The request for proposal required the bidder to use specific equipment and components patented by Vaughan, or its equivalent. A bid to supply a product specified in a request for proposal is an "offer to sell." *FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006). An "offer to sell" a patent product is a ground for an infringement claim. 35 U.S.C. § 271(a).

*Id.* at p. 5.

Understanding that GBFT is maintaining that the Chop-X pump was "equal" to Vaughan's patented equipment, Judge Hurd observed that "it is unclear whether [GBFT's price estimate] is the entire bid or if the Chop-X pump incorporates any of

the components for which Vaughan holds a patent . . . [and thus] it is premature to determine . . . that defendants did not offer to sell the exact pump equipment and components that are subject to Vaughan's patents." *Id*. at p. 6 (citation omitted).

In the second round of dispositive motions, Vaughan challenged, by a Motion to Dismiss, Counterclaims in GBFT's Seconded Amended Answer. Dkt. No. 25, Second Am. Answer; Dkt. No. 34, Pl.'s Mot. to Dismiss, dated Jan. 31, 2013. In addition to opposing Vaughan's Motion, GBFT filed a Cross-Motion seeking to dismiss Vaughan's claims again. Dkt. No. 39, Defs.' Mot. to Dismiss, dated Feb. 19, 2013. Presently both parties cohere to Judge Hurd's second Memorandum-Decision and Order relative to the scope of Vaughan's patent infringement claims and attribute preeminence, albeit competing, to the Rulings therein in support of their respective positions on the adequacy of Vaughan's patent infringement contentions. Indeed, such Rulings may be controlling if not compelling in determining whether Vaughan's patent infringement contentions are adequate under these circumstances.

In seeking dismissal of Vaughan's patent infringement claims, GBFT raised the defenses of laches, equitable estoppel, and prior rights. Dkt. No. 62, Mem.-Dec. & Order at p. 22. In support of these defenses, "[d]efendants imply that since their bid . . . contemplated a Chop-X pump, Vaughan's patent infringement claims essentially allege that the Chop-X pump infringes its patents." *Id*. at p. 22. Because of these

-5-

defenses, GBFT posited that Vaughan's claims were barred. *Id*. But, Judge Hurd disagreed:

> As Vaughan specifically explains, it 'is not asserting that the Chop-X pump, by itself, infringes Vaughan's patents. Rather, Vaughan contends that [GBFT's] bid in response to the bid specifications for the Rensselaer project is an infringing offer for sale . . . . Indeed, if discovery reveals that defendants only offered to sell **pump components that are not covered by any of Vaughan's patents**, then the infringement claims will be without merit. . . . Similarly, the prior use of the Chop-X pump does not bar the current infringement claims, which **plaintiff maintains do not simply relate to that pump itself**.

*Id*. at pp. 22-23 (emphasis added).

Solidifying this point, Judge Hurd accentuates that

> Vaughan is not alleging that the offer to sell the Chop-X pump itself infringes their patents. They instead claim that the components and equipment contemplated in defendants' bid infringes their patents . . . . At this early stage of the litigation, plaintiff is entitled to discovery to determine if defendants' bid did, in fact, infringe. Indeed, the terms of the bid indicate that the Chop-X pump is only 'part of this project .'. . . It is unclear whether this bid[5] contemplated any alterations to the Chop-X pump or otherwise included components for which Vaughan holds patents.

*Id*. at p. 24.

### C. Pretrial Litigation

On January 3, 2013, this Court issued a Scheduling Order that included a schedule specifically related to the various stages of patent infringement cases and

---

[5] Although Judge Hurd refers to a bid, he may have actually been referring to the price estimate. At this juncture of the litigation, especially for this Court to decide the Plaintiff's patent infringement contentions issue, only the price estimate has been presented. *See* Dkt. No. 80-3, Defs.' Ex. C. The Court remains uncertain if this constitutes the full and final bid.

consistent with this District's Patent Rule 2.1. Dkt. No. 27, Schedule A. Pursuant to the Scheduling Order, Vaughan disclosed its infringement contentions on January 17, 2013. Dkt. No. 37, Defs.' Lt.-Mot., dated Feb. 14, 2013, Ex. A. On February 14, 2013, GBFT filed a Letter-Motion seeking a conference to address Vaughan's purported failure to identify any accused instrumentality and to compel disclosures as required by the District's Local Rules. Dkt. No. 37. Vaughan responded by stating that it had not failed to comply with Local Patent Rule 3.1. Dkt. No. 41, Pl.'s Lt.-Br., dated Feb. 20, 2013. However, in the interim, on January 31, 2013, Vaughan filed a Motion to Dismiss GBFT's Counterclaims, Dkt. No. 34, to which GBFT filed a Cross-Motion to Dismiss Vaughan's Claims, Dkt. No. 39. Because the Court issued an Order staying all proceedings until Judge Hurd resolved the pending dispositive motions, the matter of Vaughan's claim contentions was not immediately addressed. The Court directed the parties to immediately file a status report to the attention of this Court once Judge Hurd rendered a ruling on the pending motions. *See* Dkt. No. 43, Order, dated Mar. 5, 2013.

Although Judge Hurd decided those pending Motions on October 23, 2013, Dkt. No. 62, and because of other pretrial litigation events and the joinder of a third party, the Court did not receive the parties' status report until May 6, 2014, seeking a conference to address the claim contention issue and to modify the Scheduling

Order. *See* Dkt. Nos. 76, Pl.'s Lt.-Br., dated May 6, 2014, & 77, Defs.' Lt.-Br., dated May 7, 2014. As requested, a telephone conference was held on the record on May 20, 2014. After hearing the parties, especially both parties' iterated references to the impact of the October 23rd Memorandum-Decision and Order upon Vaughan's claim contentions, the Court deferred the issuance of a Scheduling Order and directed further briefing on the claim contention issue. Dkt. No. 79, Order, dated May 20, 2014.

## II. DISCUSSION

### A. The Parties' Respective Positions

The debate over Vaughan's disclosure of asserted claims and infringement contentions turns on what constitutes an accused instrumentality in this matter. In Vaughan's view, "[t]he accused instrumentality is a bid submitted by Defendants. . . . The bid meeting that specification is an infringing offer for sale." Dkt. No. 80-1, Defs.'Ex. A. Compliant with this proposition, Vaughan provided a claim contention chart as to each patent alleged to have been infringed: one column specifies the claims of infringement and the other column identifies a specific and corresponding section of the bid specification to a particular claim of infringement. *Id.*; *see also generally* Dkt. No. 80-6, Defs.' Ex. F, Pl.'s Interrogs. Vaughan contends that this chart outlines the specific paragraphs from the bid specification that if fulfilled by GBFT would

infringe its patents, and thus, at this stage of the litigation, it has complied with the Local Patent Rules. Dkt. No. 81 at p. 3.

GBFT disagrees that the bid specification itself could serve as an accused instrumentality. It contends that "Vaughan's infringement allegations center around alleged modification or additions to the Chop-X pump and other equipment referenced in [its] budgetary quote to Pioneer Pump." Dkt. No. 80, Defs. Lt.-Mot., dated May 30, 2014, at p. 1. In GBFT's considered view, the asserted claims are directed to a centrifugal pump and it posits that Vaughan failed to point out the infringing accused apparatus, product, or device as required by Local Patent Rule 3.1(b). *Id.* at p. 2. "[Vaughan's] refusal to identify specifically where in the Chop-X pump, modified or unmodified, or in any alleged additional equipment that would accompany the Chop-X [infringes its patents] . . . casts doubt on the sufficiency of [Vaughan's] pre-suit investigation" and correspondingly the claim contentions. *Id.* at p. 6 In support of its position, GBFT cites to the October 23rd Memorandum-Decision and Order: "Vaughan is not alleging that the offer to sell the Chop-X pump itself infringes their patent. They instead claim that the **components and equipment** contemplated in defendants' bid infringes their patents." *Id.* at p. 1 (citing Dkt. No. 62 at p. 24) (emphasis added by Defendants). Therefore, GBFT requests the Court to direct Vaughan to supplement its infringement contentions in order to comply with Local

Rule 3.1, amend its responses to their interrogatories, and produce its related documents promptly. *Id.* at p. 7. Moreover, GBFT is concerned that if Vaughan is not compelled to supplement its contentions to address "components and equipment," it would be unfairly required to "map the claim limitations against the components and equipment contemplated in the purported bid (or against the components and equipment they guess [Vaughan] intends to accuse) rather than respond to Plaintiff's contentions." Dkt. No. 82, Defs.' Lt-Br., dated June 3, 2014, at p. 2.

In response, Vaughan highlights that it has reiterated repeatedly that it is not accusing the Chop-X pump of infringement, but that the GBFT's bid, if it fully complies with the specifications of the Rensselaer Project, would be an infringing offer for sale. Dkt. Nos. 81, Pl's Lt.-Br., dated May 30, 2014, & 83, Pl.'s Lt.-Br., dated June 3, 2014. Vaughan notes, referring again to Judge Hurd's Memorandum-Decision and Orders, that Judge Hurd understood its theory, and has found that theory to be viable enough to warrant discovery as to GBFT's intentions, and finds it hard to fathom why GBFT is "willfully blind[ing] itself to this seemingly simple concept." Dkt. Nos. 81 at p. 3, & 83 at pp. 1 & 2. Finally, Vaughan argues that its contentions have met the requirements of the Local Patent Rules and it is now GBFT's turn to disclose.

## B. Analysis

This District's Local Patent Rules require the patentee to disclose specifically each asserted claim and each accused instrumentality of the opposing party. L.Pat. R. 3.1(b). The Court readily accepts each of GBFT's case citations pronouncing that local patent rules must be closely followed, and Vaughan has not proffered any citation to the contrary. Yet complete adherence to the Local Patent Rules is not the issue. The fundamental issue is what constitutes an accused instrumentality. Notwithstanding Vaughan's repeated explanations, even as understood by Judge Hurd, GBFT unreasonably clings to the notion that the accused instrumentality has to be the Chop-X pump and the attached or connected components and equipment, which is driving its misapprehension of Judge Hurd's Memorandum-Decision and Order.

When GBFT asserted, *inter alia*, that their bid contemplated a Chop-X pump and thus Vaughan's patent infringement claims essentially allege that the Chop-X pump infringes its patents, Judge Hurd found the argument to be "without merit." Dkt. No. 62 at p. 22. Explaining this observation, Judge Hurd found that Vaughan "is not asserting that the Chop-X pump, by itself, infringes [its] patents," but notes it is GBFT's bid in response to the bid specifications for the Rensselaer project that would constitute the infringing offer to sell. *Id*. But also realizing that alone may not be enough to ultimately establish the infringement claims, Judge Hurd opined that "if

discovery reveals that defendants only offered to sell pump components that are not covered by any of Vaughan's patents, then the infringement claims will be without merit." *Id*. at pp. 22- 23.

If this was not clear to either party, Judge Hurd, later in the Memorandum-Decision and Order, reiterates both Vaughan's theory and the importance of discovery:

> Vaughan is not alleging that the offer to sell the Chop-X pump itself infringes their patents. They instead claim that the components and equipment **contemplated** in defendants' bid infringes their patents . . . . At this early stage of the litigation, plaintiff is entitled to discovery to determine if defendants' bid did, in fact infringe . . . . It is unclear whether this bid **contemplated** any alterations to the Chop-X pump or otherwise included components for which Vaughan holds patents.

*Id*. at 24 (citing *FieldTurf Int'l, Inc. v. Sprinturf, Inc*., 433 F.3d 1366, 1369-70 (Fed. Cir. 2006)).

The operative term is not "components and equipment" as GBFT emphasizes but what would be "contemplated" to be a part of the bid.

This is exactly the reason why Judge Hurd noted that Vaughan is entitled to discovery in order to determine if defendants' bid infringes their patents. Without knowing GBFT's <u>contemplated</u> components and equipment that would comprise the entire digester system, it is difficult to comprehend how Vaughan could specifically list them as accused instrumentalities or, in the final outcome, even meet its infringement claims. This point is driven home by *FieldTurf Int'l, Inc. v. Sprinturf,*

*Inc.*, 433 F.3d 1366. Although noting that a bid to supply a product in a request for proposal is a traditional offer to sell, the district court in *Field Turf Int'l, Inc.*, in deciding a summary judgment motion, held that, in considering all of the surrounding circumstances, the defendant's bid, "while undoubtedly an offer of sale," was not an offer to sell the plaintiff's patented product for the principal reason that the defendant intended to sell a non-infringing product. *Id*. at p. 1370. Critical to the district court's ruling was that the defendant provided testimony to the effect that it intended to install only its products which did not infringe the plaintiff's products. *Id*. Affirming the district court, the Federal Circuit stated that "in considering the nature of the [defendant's] product that was intended and understood to be the product that would be installed," the district court did not err in law when holding that the bid was not an offer to sell an infringing product. *Id*.

Judg Hurd, referring to *FieldTurf Int'l, Inc.*, understood Vaughan's dilemma in establishing its patent infringement claims and invariably having an impact upon Vaughan's ability to adequately elaborate its claim contentions if it was deprived of what GBFT contemplated as components and equipment to be incorporated into the digester mixing system for the Rensselaer Project. Stating that Vaughan is entitled to discovery as to whether GBFT's bid and/or the composition of the system infringed Vaughan's patents was apparent and elemental to Judge Hurd. Hence, all of this begs

the question: how would Vaughan determine GBFT's contemplations without discovery from GBFT? And, how would Vaughan know if GBFT contemplates to modify the Chop-X pump or integrate other parts and equipment into the system to the extent that either the system, or the modifications, or other equipment would infringe Vaughan's patents without discovery from GBFT?

Considering what may have been disclosed thus far, it appears improbable that we have reached that stage of supplementing the claim contentions. Maybe having all of the bid terms would be helpful. Although the parties cavalierly mention the presence of a bid, the Court submits that they may have conflated the price estimate as being the bid.[6] The two-paged price estimate would not suffice as outlining what GBFT contemplates as constituting its hydraulix process mixing system proposal. Dkt. No. 80-3, Ex. C. Still, the price estimate mentions that the Chop-X pump is included "as a part of this project," suggesting that there is more to be considered. And, as a disclaimer within the price estimate, GBFT reserves the right to review the "project design at the 50% mark to discuss and reconsider any changes that may be made during the design process subsequent to the submission of this budgetary proposal." *Id*. at p. 2. At this juncture, the Court agrees with Vaughan that it remains

---

[6] Yet, the Court could be wrong and this two-paged document could very well constitute the bid, in which case, it is rather thin as to what components and equipment are contemplated to comprise the digester mixing system.

unknown what GBFT intends to do in fully responding to the bid. Outside the bid specifications, there does not appear to be enough information for Vaughan to amplify its claim contentions. This indeed compels the necessity for further discovery to determine what in addition to the Chop-X pump GBFT intends on including in the system to meet the bid specifications. Vaughan opines that after engaging in some discovery the full extent of the infringement will be known. The Court is not ignoring the profundity of the Local Patent Rules but observes that they should not be rigidly or formulaically applied in anomalous circumstances such as this. Although the bid specification and the bid are not classic accused instrumentalities as reflected in the Local Patent Rules, at this juncture of the litigation, they shall serve in that capacity. Therefore, Vaughan's claim contention charts has identified, to the greatest extent possible, the accused instrumentality and accordingly is deemed adequate with the full understanding that it will have to supplement its contentions and responses to the interrogatories upon further disclosure. Vaughan acknowledges its obligation to supplement its responses and amend its contention chart to the extent supporting documents exist. In order to appreciate what GBFT contemplates in terms of its entire mixing system, a Rule 30(b)(6) deposition may be necessary. Even reverse engineering of the Chop-X pump to determine if any modification include Vaughan's

patents may also be warranted.[7]

On the other hand, the Court acknowledges that it may be unfair to expect GBFT to serve an adequate disclosure of unenforceability contentions, mapping the claim limitations without greater specificity from Vaughan. Appreciating that mapping claim limitations may be problematic under these circumstances from what Vaughan has contended in its contention charts, GBFT should still be able to serve a limited disclosure of invalidity, non-infringement, and unenforceability, with the understanding there would be a need to supplement. Furthermore, the exchange of claim terms for construction would not be impeded as well based upon the disclosures served thus far.

Regrettably, the parties are unable to circumvent a series of supplementation that may prolong this litigation beyond that contemplated by the Local Patent Rules. Recognizing that both parties will have to supplement their respective claim contention disclosures, obviously, such supplementation or amendments may not occur until depositions are completed. With that being said, the Court cannot direct a specific date when supplementation should occur. Yet, the Court reminds the parties

---

[7] In terms of whether the Chop-X pump may be an accused instrumentality, the parties disagree as to whether Vaughan conducted reverse engineering of this item. GBFT states, upon information and belief that Vaughan employees reverse engineered the Chop-X pump, Dkt. No. 63, Second. Am. Answer at ¶¶ 142-46, while Vaughan states none of its employees have ever inspected the internal component of this pump, Dkt. No. 80-5, Pl.'s Resp. to Def.'s Request for Admission.

that supplementation or corrections must occur in a timely manner if and when the party learns that in some material respect the disclosure is incomplete or incorrect. FED. R. CIV. P. 26(e).

Vaughan has previously proposed a revised Scheduling Order. Dkt. No. 76-2. This proposal was deferred until this discovery matter was resolved. Ostensibly, this litigation must deviate slightly from the Local Patent Rules' timetable in order to get this matter back on track. Therefore, the Court directs the parties to meet and confer and then file with the Court a proposed Scheduling Order within seven days of the filing date of this Memorandum-Decision and Order.

Within the same period, the parties shall meet and confer to discuss the protocol for the discovery of electronically stored information and its ultimate disclosure. In terms of inspection and/or production of documents, requiring an adversary to travel outside of this district to complete either of these tasks is unreasonable and will not be sanctioned. Considering the advances in technology that have enhanced the production of massive quantities of documents, relevant documents can easily be transmitted in some agreed upon electronic format.

### III. CONCLUSION

Based upon all of the foregoing, it is hereby

**ORDERED**, that GBFT's Requests for Vaughan to immediately supplement its patent infringement claim contentions and amend its responses to interrogatories and, to the extent that GBFT seeks permission to file a motion for Rule 11 sanctions are **denied**; and it is further

**ORDERED**, that Vaughan's initial claim contention chart shall stand and that GBFT shall serve its limited disclosure of non-infringement, invalidity, and unenforceability contentions consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that, consistent with Rule 26(e), and after further discovery has been concluded, the parties shall supplement or amend their respective contention charts and responses to interrogatories consistent with additional or corrective information revealed during discovery; and it is further

**ORDERED**, that the exchange of documents, pursuant to Federal Rules of Civil Procedure 26 and 34, and Local Patent Rule 3.2, will not require the opposing party to travel outside this District in order to inspect and/or copy relevant material; and it is further

**ORDERED**, that the parties shall meet and confer to propose a revised Scheduling Order which will be filed with the Court within seven (7) days from the filing date of this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

July 11, 2014
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge